1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

11 | KELVIN CHAPMAN,                          CASE NO. C14-5680 RJB

                Plaintiff,                 ORDER ON DEFENDANTS'
12                                         MOTION FOR SUMMARY
        v.                                 JUDGMENT
13
   PROGRESS RAIL SERVICES
14 CORPORATION, an Alabama For profit
   Corporation licensed to do business in the
15 State of Washington, and CATERPILLAR
   INC., a Delaware For Profit Corporation
16 licensed to do business in the State of
   Washington,
17
                Defendants.
18

19        This matter comes before the Court on the Defendants' Motion for Summary Judgment.

20 Dkt. 23.  The Court has considered the pleadings filed regarding the motion and the remaining

21 record.  Oral argument has been requested, but would not be helpful in resolving the motion.

22        Plaintiff filed this employment discrimination case on June 14, 2014.  Dkt. 1.  Plaintiff

23 alleges that employees of Defendant Progress Rail Services Corporation ("Progress") "repeatedly

24 made offensive, derogatory and degrading remarks about the Plaintiff's race and sexual

1   orientation," "leered" at him, touched him in an "unwanted and sexual manner," and acted in a

2   way that created a "hostile work environment."  Dkt. 1-2, at 2-3.  Plaintiff alleges that he

3   reported the behavior and was punished for doing so.  *Id.*, at 3.  Plaintiff makes claims for

4   assault, intentional infliction of emotional distress/outrage ("outrage"), negligent infliction of

5   emotional distress, and "negligent supervising and/or hiring."  *Id.*  Plaintiff also makes a claim

6   for "discrimination as that term is defined by RCW 49.60.030 and RCW 49.44.090" the

7   Washington Law Against Discrimination ("WLAD").  *Id.*

8          On August 27, 2014, this case was removed from Pierce County, Washington Superior

9   Court based on diversity jurisdiction.  Dkt. 1.

10          Defendants now file a motion for summary judgment.  Dkt. 23.  Plaintiff has agreed to

11   dismiss Defendant Caterpillar, Inc. Dkt. 24, at 2.  Accordingly, no further analysis is necessary

12   as to Caterpillar, Inc., and that defendant should be dismissed.  For the reasons stated below,

13   Defendant Progress' motion for summary judgment should be granted.

14                          **I.    FACTS AND PENDING MOTION**

15          Plaintiff and Jayson Liess started working for Progress in 2009.  Dkt. 25.  In 2012,

16   Plaintiff was a lead, and Mr. Liess was Plaintiff's supervisor.  *Id.*  Plaintiff is a heterosexual,

17   black man, and Mr. Liess is a heterosexual, white man.  Dkt. 24-1, at 23-24.

18          Plaintiff points to Mr. Liess' use of the term "boy" and seven incidents involving Mr.

19   Liess as the basis of his claims.  Dkt. 29.

20          **A.  USE OF THE TERM "BOY"**

21          As to Mr. Liess' use of the term "boy," Plaintiff testified that Mr. Liess used the term

22   several times when he was correcting Plaintiff, or when he was angry.  Dkt. 24-1, at 79.

23   Plaintiff testified that he did not believe Mr. Liess was being "discriminatory toward [him]

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 2

1   because of the color of [his] skin" when he used the term.  Dkt. 24-1, at 76.  Plaintiff testified

2   that, "I stated that [Mr. Liess] is not a racial individual but that word, if it's used more than the

3   name that's been given to you, can become very demeaning."  Dkt. 24-1, at 81.  Plaintiff also

4   testified that Mr. Liess referred to other workers as "boy" including a Hispanic man and other

5   white employees.  Dkt. 24-1, at 77-78.  Plaintiff acknowledged that he called Mr. Liess "boy" as

6   well.  Dkt. 24-1, at 78.

7          In his declaration, filed in opposition to Progress' motion for summary judgment,

8   Plaintiff states:

9              It is well known to me and my fellow black men that the term "boy" is
              used to de-masculinize black men, and the use of the word is pervasive. . . A
10             black man or woman would not fail to understand why a white supervisor's
              reference to a black man at his workplace as "boy" is loaded with racial content.  I
11             understand that a white man or woman may not.  My supervisors are white
              people, and Mr. Liess is white.  It is their ignorance that led them to fail to
12             recognize the import of my complaint. . . Mr. Liess always used the term when he
              was angry with me.  Mr. Liess always used the word with an inflection that
13             implied dominance.

14   Dkt. 29, at 5.

15         Plaintiff did not report Mr. Liess' use of this term until December of 2012.  Dkt. 24-1, at

16   76-81.  Yet, Plaintiff acknowledges that when he became an employee of Progress, he was

17   trained in Progress' Code of Conduct (which describes harassment and the process by which it is

18   reported) and the human resource policy on "Prohibited Harassment."  Dkt. 24-1, at 18-22.  He

19   received and still receives annual training on these topics as well.  *Id.*

20

21   **B**.    **SEVEN INCIDENTS**

22         (1) According to Plaintiff, around June 6, 2012, Plaintiff and several co-workers saw Mr.

23   Liess approach another employee, Greg Siefert, who was down on one knee working.  Dkt. 29.

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 3

1   Plaintiff states that Mr. Liess put his leg over Mr. Siefert's shoulder and proceeded to thrust his

2   hips toward Mr. Siefert.  Dkt. 29.

3           Plaintiff testified that he and other co-workers laughed.  Dkt. 24-1, at 42.  Plaintiff

4   testified he thought it was funny at the time.  Dkt. 24-1, at 43.  Plaintiff testified that he was able

5   to continue to do his job afterward.  Dkt. 24-1, at 43.  In his declaration filed in opposition to

6   Progress' motion for summary judgment, Plaintiff states, however, that he was "disgusted" by

7   this behavior.  Dkt. 29.

8           (2) On June 28, 2012, Plaintiff was down on one knee taking measurements of a railcar.

9   Dkt. 24-1, at 32; 29, at 2 and 29-1, at 3.  Mr. Liess walked up behind him, put his leg over

10   Plaintiff's shoulder, and "started humping" Plaintiff.  *Id.*  Plaintiff testified that he laughed

11   (along with the other employees present), motioned with his arm for Mr. Liess to get off of him,

12   and asked Mr. Liess if he was "crazy."  Dkt. 24-1, at 34.  Plaintiff also testified that he did not

13   believe that his "humping" was because of his race or sex.  Dkt. 24-1, at 39-40.

14           In his declaration filed in opposition to Progress' motion for summary judgment, Plaintiff

15   states that he was "mortified, disgusted and angry."  Dkt. 29, at 2.  He states that he continued to

16   do his work, but he was upset.  Dkt. 29, at 2.

17           (3) Several months later, on November 7, 2012, Plaintiff testified that he and a few other

18   employees were in the administrative offices.  Dkt. 24-1, at 44-45.  Plaintiff states that he and the

19   other employees saw Mr. Liess "hump" a doorframe.  Dkt. 24-1, at 45.  Plaintiff states that Mr.

20   Liess made some comments about sex.  Dkt. 24-1, at 45.  Plaintiff testified that he laughed

21   because he thought it was funny and that, at that time, did not find the behavior offensive.  Dkt.

22   24-1, at 46.  Plaintiff was able to continue working afterward.  Dkt. 24-1, at 47.

23

24

1     In his declaration filed in opposition to Progress' motion for summary judgment, Plaintiff

2     states that he was "embarrassed and upset" by this behavior.  Dkt. 29, at 2.

3     (4) On November 15, 2012, Plaintiff states that he was sitting and talking with Jeff

4     Shipton, a production manager of the locomotive shop.  Dkts. 24-1, at 53; and 29-1, at 5.  Mr.

5     Liess approached, put his left hand on Plaintiff's right thigh, and rubbed his thigh from the

6     outside in.  Dkt. 24-1, at 49.  It lasted for about two seconds.  Dkt. 24-1, at 49.  Plaintiff moved

7     Mr. Liess' hand away and asked him if he was "crazy."  Dkt. 24-1, at 50.  Plaintiff states that Mr.

8     Liess said "no" but that he was "always looking" and that Plaintiff would never know when he

9     might "walk up on" Plaintiff.  Dkt. 24-1, at 50.  Plaintiff testified that he did not believe that Mr.

10    Liess engaged in this behavior because of Plaintiff's sex or race.  Dkt. 24-1, at 50-51. Plaintiff

11    testified that he never had the feeling that Mr. Liess was sexually attracted to him.  Dkt. 24-1, at

12    51. Plaintiff was able to carry on and do his job after the incident.  Dkt. 24-1, at 54.

13    In his declaration filed in opposition to Progress' motion for summary judgment, Plaintiff

14    states that he was "angry and offended."  Dkt. 29, at 3.  Plaintiff stated that he felt that the

15    touching was "sexual in nature."  Dkt. 29, at 3.

16    (5) On November 17, 2012, Mr. Liess rubbed Plaintiff's shoulder "in a soft way back

17    and forth," two or three times, and Plaintiff felt uncomfortable.  Dkts. 24-1, at 56; 29-1, at 6.

18    Plaintiff testified that Mr. Liess did not make any comments regarding sex or race when he

19    committed this act.  Dkt. 24-1, at 58.  Plaintiff also testified that he had no information that Mr.

20    Liess rubbed his shoulder in this matter because of Plaintiff's sex or race.  Dkt. 24-1, at 57-58.

21    Plaintiff further testified that he had seen Mr. Liess rub other people's shoulders in the past.  Dkt.

22    24-1, at 59.  Plaintiff states that he used a "shoulder shrug" to get him to stop.  Dkt. 24-1, at 60.

23

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 5

1  Plaintiff was able to continue to do his job.  He states that he didn't report it because he "didn't

2  consider it at the particular time an offensive act."  Dkt. 24-1, at 62.

3      In his declaration filed in opposition to Progress' motion for summary judgment, Plaintiff

4  states that he was "embarrassed and angered by this unwelcome and unwanted touching."  Dkt.

5  29.

6      (6) On November 29, 2012, Plaintiff and another employee were in Mr. Liess' office.

7  Dkts. 24-1, at 63 and 29-1, at 8.  They saw Mr. Liess put his left leg up on his desk, "hump" his

8  desk for a few seconds, and moan.  Dkts. 24-1, at 63-65; and 29-1, at 8.  Plaintiff testified that he

9  did not have any information that Mr. Liess acted like this because of Plaintiff's sex or race.

10  Dkt. 24-1, at 66.  Plaintiff testified that he and the other employee laughed.  Dkt. 24-1, at 67.

11  Plaintiff testified that he thought that it was funny at the time.  Dkt. 24-1, at 67.  Plaintiff was

12  able to continue working after this desk "humping" incident.  Dkt. 24-1, at 68.

13      In his declaration filed in opposition to Progress' motion for summary judgment, Plaintiff

14  states that he was "embarrassed and upset by this" desk "humping" incident.  Dkt. 29, at 3.

15      (7) On December 5, 2012, Plaintiff was standing in the office talking with some co-

16  workers.  Dkts. 24-1, at 69, 29-1, at 8.  He turned to set his hat and gloves on a table and Mr.

17  Liess approached from behind.  Dkts. 24-1, at 69; 29-1, at 8.  As Plaintiff was turned, Mr. Liess

18  wrapped his arms around Plaintiff, picked him up, put his right leg around Plaintiff and started

19  "humping" Plaintiff.  Dkts. 24-1, at 69; 29-1, at 8.  Plaintiff nudged him away and said "he knew

20  he was wrong."  Dkt. 24-1, at 70.  Mr. Liess did not respond and walked away.  Dkt. 24-1, at 70.

21  Plaintiff testified that he did not have any information that Mr. Liess acted like this because of

22  his sex or gender.  Dkt. 24-1, at 71.  Plaintiff was offended by the behavior.  Dkt. 24-1, at 72.

23  Plaintiff testified that he was able to continue to do his job afterward.  Dkt. 24-1, at 73.

24

C. **PLAINTIFF REPORTS THE CONDUCT**

Around December 11, 2012, Plaintiff presented Progress' Human Resources Assistant Marsha Harris with a document entitled "My Reasons for Requesting a Transfer." Dkt. 25, at 2. This was the first time Plaintiff told anyone in management or in the human resources department that he believed he had been sexually and racially harassed at work or about any of these incidents. Dkt. 24-1, at 3-4. Plaintiff listed the above seven incidents in the document and discussed Mr. Liess' use of the word "boy." Dkt. 29-1. When asked why he did not report any of these events earlier, Plaintiff states that he considered, and still considers, Mr. Liess a friend, and did not want to get him fired. Dkt. 24-1, at 4-5. Plaintiff finally reported the behavior so that: (1) it would stop, (2) Plaintiff would get transferred, and (3) Mr. Liess would receive further training. Dkt. 24-1, at 5 and 7-8.

After reading Plaintiff's document, Ms. Harris contacted David Costantini, Progress' Tacoma, Washington Facilities Manager, and gave him the document. Dkt. 25, at 2. Ms. Harris and Mr. Costantini then contacted Bud Lawlor, "in corporate Human Resources," and Mr. Lawlor directed them to immediately suspend Mr. Liess without pay. Dkt. 25, at 2. Mr. Liess was suspended without pay that day and told that an investigation was being conducted. Dkt. 25, at 3. Ms. Harris and Mr. Costantini told Plaintiff they were conducting an investigation into the issues raised in his document and that they took the issues seriously. Dkt. 25, at 3. Plaintiff was offered paid leave while the investigation was pending, and he opted to take it. *Id.*

Within a few days, Progress hired a neutral third-party to investigate Plaintiff's allegations. Dkt. 25, at 3 and 27 at 2. On December 19, 2012, the third-party investigator, who was an attorney, interviewed approximately 15 people, including Mr. Liess and Plaintiff. Dkt. 25, at 3.

1    After the investigation was complete, on January 2, 2013, Ms. Harris, Mr. Costantini, and

2  Mr. Lawlor met with Mr. Liess.  Dkts. 25, at 3; 26, at 2; and 27, at 3.  They explained the

3  investigation findings to Mr. Liess, gave him a disciplinary letter, told him that any further

4  misconduct or retaliation against Plaintiff would lead to immediate termination, informed him he

5  was going to have to participate in further harassment training, and that he was to apologize to

6  Plaintiff.  *Id*.  Mr. Liess was informed that he would not receive pay for the three weeks that he

7  was on leave.  *Id.*  Plaintiff was then invited into the meeting.  *Id.*  Mr. Liess apologized to

8  Plaintiff, and they shook hands.  *Id.* Mr. Lawlor told Plaintiff that Progress does not tolerate

9  harassment or discrimination and requested that Plaintiff immediately inform the company if he

10  ever had further issues with an employee, including Mr. Liess.  Dkt. 27, at 3.  Mr. Lawlor told

11  Plaintiff that they "could not transfer him at that time because, although [they] had looked, there

12  were not currently any open positions."  Dkt. 27, at 3.  Plaintiff testified that he was unaware of

13  any open positions for which he would have been willing to accept a transfer at that time.  Dkt.

14  24-1, at 8.

15    On June 7, 2013, Plaintiff accepted a transfer from the "Heavy Car Repair" to the "Rip

16  Track."  Dkts. 25, at 4 and 26, at 3.  Although Mr. Liess remained his supervisor, he reported

17  directly to a different "Lead."  Dkt. 25, at 4.  This was a lateral transfer that involved no change

18  in compensation or benefits.  *Id.*

19    In mid-January 2014, Plaintiff accepted a transfer from the "Rip Track" to the

20  "Locomotive Shop."  *Id.*  He had a new supervisor, Jeff Shipton.  *Id.*  This was a lateral transfer

21  that involved no change in compensation or benefits.  Dkt. 25, at 4.

22    According to Ms. Harris no other employee complained about Mr. Liess' behavior.  Dkt.

23  25, at 2.  Further, although Plaintiff alleges that Mr. Liess called him "boy" on one occasion a

24

1  few weeks after the January 2013 meeting, Plaintiff did not report that or any other improper

2  behavior by Mr. Liess. Dkt. 24-1, at 9-11.  This case was filed on June 27, 2014.  Dkt. 1.

3  **<u>PENDING MOTION</u>**

4  Defendant argues that Plaintiff's hostile work environment claims based on sex, sexual

5  orientation, and race should be dismissed because Plaintiff cannot show sufficient issues of fact

6  that Mr. Liess' conduct was based on Plaintiff's sex, sexual orientation, or race, that the behavior

7  was sufficiently severe, or that the conduct can be imputed to Defendant because it took remedial

8  action.  Dkts. 23 and 31.  Defendant argues that Plaintiff's claim for retaliation should be

9  dismissed because no adverse employment action was taken against him.  *Id.*  Defendant also

10  moves for dismissal of Plaintiff's claims for assault, outrage, negligent infliction of emotional

11  distress and negligent supervision and/or hiring, arguing that these claims are duplicative of the

12  discrimination claims and so should be dismissed so that Plaintiff cannot receive a double

13  recovery.  *Id.*  Defendant also argues those claims should be dismissed because they are barred

14  by the state's worker's compensation statute, RCW § 51.04.010.  *Id.*  Defendant lastly argues

15  that these claims should be dismissed because it cannot be held liable because Mr. Liess was not

16  acting within the scope of his employment when he committed the assault and the other torts.  *Id.*

17  Plaintiff opposes the motion and argues that he was discriminated against based on sexual

18  orientation and race.  Dkt. 28.  He asserts that the conduct should be imputed to the Defendant

19  because it knew of the behavior and the corrective measures taken were not adequate because he

20  still had to work under Mr. Liess' supervision for a year after he complained about it.  *Id.*  He

21  argues that his retaliation claim should not be dismissed because the adverse action taken against

22  him was the failure to transfer him when other non-black employees were transferred.  *Id.*

23  Plaintiff argues that his common law claims should not be dismissed.  *Id.*

24

## II.   <u>DISCUSSION</u>

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

1   to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

2   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

3   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

4   **B.  HOSTILE WORK ENVIRONMENT CLAIMS BASED ON SEX AND RACE**

5   The WLAD prohibits discrimination based on "sex," "sexual orientation," and "race."

6   RCW 49.60.180(3).  Prohibited discrimination includes harassment based on sex, sexual

7   orientation, or race, which "unfairly handicaps an employee against whom it is directed in his or

8   her work performance."  *See Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845, 852-53

9   (2000), *as amended on reconsideration* (Feb. 29, 2000)(*quoting Glasgow v. Georgia-Pacific

10  Corp.*, 103 Wash.2d 401, 405 (1985).  In the context of employment discrimination, Washington

11  courts have traditionally found federal case law persuasive.  *Loeffelholz v. Univ. of Washington*,

12  175 Wash. 2d 264, 274 n.1 (2012).  To establish a prima facie hostile work environment claim, a

13  plaintiff must show the following four elements: "(1) the harassment was unwelcome, (2) the

14  harassment was because [plaintiff was a member of a protected class], (3) the harassment

15  affected the terms and conditions of employment, and (4) the harassment is imputable to the

16  employer."  *Id.,* at 275.

17              1.  Whether the Harassment was Unwelcome?

18  Plaintiff states in his declaration that Mr. Liess' "humping" and thigh and shoulder

19  touching conduct and use of the term "boy" was unwelcome, and Defendant does not

20  meaningfully dispute this.  Dkt. 29.

21              2.  Whether the Harassment was because of Sex, Sexual Orientation or Race?

22  As to this element, the Plaintiff must show that the unwelcome behavior was "because

23  of" his sex, sexual orientation, or race.  *Dominguez–Curry v. Nevada Transp. Dep't,* 424 F.3d

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 11

1027, 1034 (9th Cir.2005). "This element thus requires a nexus between the specific harassing

conduct" and Plaintiff's sex, sexual orientation, or race. *Robel v. Roundup Corp.*, 148 Wash. 2d

35, 46, 59 P.3d 611, 617 (2002)

Turning first to his hostile work environment claim based on sex/sexual orientation,

Plaintiff has failed to point to sufficient issues of fact that Mr. Liess' humping a co-worker,

humping Plaintiff, humping a door frame, humping a desk, or rubbing Plaintiff's thigh and

shoulder were because of Plaintiff's sex or sexual orientation.  Plaintiff testified that he did not

have any information that Mr. Liess' rather juvenile behavior was because of Plaintiff's sex or

sexual orientation.  Plaintiff has not met his burden as to this element.

As to his race based claim, Plaintiff testified that he did not think that Mr. Liess called

him "boy" because of his race.  Plaintiff acknowledges in his declaration that Mr. Liess used the

term to dominate him, and it was used out of ignorance of the significant historical relevance, but

does not assert that he thought the term was used in a racist manner.  Plaintiff also testified that

Mr. Liess called several other Hispanic and white employees "boy."  Plaintiff admitted to calling

Mr. Liess "boy."  Plaintiff did not carry his burden to show that there are issues of fact as to

whether Mr. Liess' use of the term "boy" was because of Plaintiff's race.

3.   Whether the Harassment Affected Terms and Conditions of Employment?

"The third element is satisfied if the harassment is sufficiently pervasive so as to alter the

conditions of employment and create an abusive working environment, to be determined with

regard to the totality of the circumstances." *Loeffelholz v. Univ. of Washington*, 175 Wash. 2d

264, 275 (2012).  Courts look at the "frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton,*

1    524 U.S. 775, 787–88 (1998); *Glasgow,* 406.  "Simple teasing, offhand comments, and isolated

2    incidents (unless extremely serious) will not amount to discriminatory changes in the terms and

3    conditions of employment." *Dominguez–Curry,* at 1034.  The conduct must be subjectively and

4    objectively "abusive."  *Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 362, 287 P.3d 51,

5    58 (2012).

6          Plaintiff has failed to point to sufficient issues of fact that the harassment here was

7    sufficiently pervasive as to alter the terms and conditions of his employment.  The seven

8    incidents alleged to make up his sex/sexual orientation based claim occurred over the span of six

9    months.  In regard to a majority of the events, Plaintiff testified that he was not offended at the

10   time and laughed because he thought the behavior was funny.  Plaintiff does not indicate that he

11   ever felt physically threatened.  While Plaintiff's declaration indicates that he was humiliated in

12   two of the incidents, Plaintiff testified that he was able to resume his work after all the events.

13   Indeed, Plaintiff offers no evidence that these incidents interfered in any manner with his work

14   performance.

15         Plaintiff has failed to show that Mr. Liess' use of the term "boy" when referring to

16   Plaintiff was sufficiently pervasive as to alter the terms and conditions of his employment. While

17   it certainly could be an offensive utterance, according to Plaintiff Mr. Liess used the term in

18   reference to several employees who were of varying races.  Plaintiff admitted to using the term

19   on Mr. Liess.  Considering the totality of the circumstances, Plaintiff has not shown sufficient

20   issues of fact that Mr. Liess' use of the term was "sufficiently pervasive so as to alter the

21   conditions of employment and create an abusive working environment."  *Loeffelholz,* at 275.

22              4.   <u>Whether the Harassment is Imputable to Defendant?</u>

23         In Washington:

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 13

1

> To hold an employer responsible for the discriminatory work environment created
> by a plaintiff's supervisor(s) or co-worker(s), the employee must show that the
> employer (a) authorized, knew, or should have known of the harassment and (b)
> failed to take reasonably prompt and adequate corrective action. This may be
> shown by proving (a) that complaints were made to the employer through higher
> managerial or supervisory personnel or by proving such a pervasiveness of sexual
> harassment at the work place as to create an inference of the employer's
> knowledge or constructive knowledge of it and (b) that the employer's remedial
> action was not of such nature as to have been reasonably calculated to end the
> harassment.

2

3

4

5

6

*Glasgow*, at 407; *See generally Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348 (2012).

7

          a.   *Whether Defendant Authorized, Knew or Should Have Known of the*
              *Harassment*

8

9       Plaintiff has failed to show that prior to his December 11, 2012 report of the seven

10 incidents and Mr. Liess' use of the term "boy" that Progress authorized, knew or should have

11 known of the harassment.  There is no evidence that Progress authorized the behavior or use of

12 the term.  Further, there is no showing that it knew or should have known of these incidents or

13 use of the term "boy."  Progress has policies prohibiting discrimination as well as a procedure to

14 report such conduct.  Dkts. 24-2, 24-3 and 25.  New employees are trained on these policies and

15 current employees receive annual training.  Dkt. 25.  Plaintiff acknowledged that he was aware

16 of the policies and reporting processes and received annual training on them.  Yet, Plaintiff

17 testified that he did not report any of the incidents before December 11, 2012.  Plaintiff argues

18 that one of the incidents occurred in front of a manager, Jeff Shipton, who was a production

19 manager of the locomotive shop, so knowledge should be imputed to Defendant.  (Plaintiff

20 testified that he thought Mr. Shipton witnessed the November 15, 2012 thigh rubbing incident

21 because he laughed. Dkt. 24-1, at 53).  Plaintiff makes no showing that Mr. Shipton should have

22 acted based on this single incident.  Moreover, Plaintiff offers no evidence that Mr. Shipton held

23 a position high enough up in the company for the company to be imputed with knowledge based

24

on his witnessing this one event.  There is no showing that Mr. Liess' conduct and use of the term "boy" should be imputed to Progress because there is no evidence that it, authorized, knew or should have known of the behavior or use of the term "boy."

    b. *Whether Defendant Failed to take Reasonably Prompt and Adequate Action*

  An employer is "required only to take whatever action [is] reasonably likely to prevent further harassment." *Francom v. Costco Wholesale Corp*., 98 Wash. App. 845, 857 (2000), *as amended on reconsideration* (Feb. 29, 2000).

  Plaintiff has further failed to show that there are issues of fact as to whether Defendant failed to take reasonably prompt and adequate action to stop the harassment.  Upon receipt of Plaintiff's document, prompt remedial action was taken.  Defendant immediately began to investigate and put Mr. Liess on leave.  Plaintiff was offered and took paid leave.  Mr. Liess was suspended for three weeks without pay.  After the investigation, Mr. Liess received a disciplinary letter and had to attend further harassment training.  He was also told that if he had one more incident, his employment would be terminated.  Mr. Liess was required and did apologize to Plaintiff.  Aside from a single time when Mr. Liess again used the term "boy," which Plaintiff did not report, the objectionable behavior stopped.  The fact that the conduct never occurred again is proof that the "response was reasonable and adequate as a matter of law." *Francom v. Costco Wholesale Corp*., 98 Wash. App. 845, 857, 991 P.2d 1182, 1188 (2000), as amended on reconsideration (Feb. 29, 2000).  Plaintiff complains that he was not transferred quickly enough.  Plaintiff fails to show that Defendant's eventual transfer of Plaintiff was not a reasonable or adequate response to the situation.  A plaintiff's dissatisfaction with the severity of company's response to allegations of harassment is not evidence the response was unreasonable. *Francom,*

1    at 857.  Plaintiff has not shown that Progress' response to his complaint was unreasonably slow

2    and inadequate.

3    **C. RETALIATION**

4         The WLAD provides that: "It is an unfair practice for any employer . . . to . . .

5    discriminate against any person because he . . . has opposed any practices forbidden by this

6    chapter, or because he . . . has filed a charge, testified, or assisted in any proceeding under this

7    chapter."  RCW § 49.60.210(1).  To establish a prima facie case of retaliation, an employee must

8    show that "(1) he or she engaged in statutorily protected activity; (2) an adverse employment

9    action was taken; and (3) there was a causal link between the employee's activity and the

10   employer's adverse action."  *Estevez v. Faculty Club of Univ. of Washington*, 129 Wash. App.

11   774, 797 (2005).

12        If a plaintiff establishes a prima facie case, then the defendant may attempt to rebut the

13   case by presenting evidence of a legitimate non-discriminatory reason for the employment

14   decision.  *Estevez,* at 797-798.  If the defendant carries its burden, the burden then shifts back to

15   the plaintiff, "who can attempt to prove that the employer's reason is pretextual."  *Id.*  "Once

16   evidence supporting a prima facie case, a non-discriminatory explanation, and pretext has been

17   presented and "the record contains reasonable but competing inferences of both discrimination

18   and nondiscrimination, 'it is the jury's task to choose between such inferences.'"  *Estevez v.*

19   *Faculty Club of Univ. of Washington*, 129 Wash. App. 774, 798 (2005).

20             1.  Protected Activity

21        Plaintiff's December 2012 complaint constitutes a protected activity.  Plaintiff met the

22   first element of the *prima facia* case.

23             2.  Adverse Employment Activity

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 16

1    Plaintiff has failed to show that there are issues of fact as to whether Defendant took an

2    adverse employment action against him.  Plaintiff acknowledges that he was not demoted,

3    received pay increases (at Mr. Liess' discretion), received necessary training, and retained all his

4    job duties after he reported the harassment in December of 2012.  Dkt. 24-1, at 24.  Plaintiff

5    testified that after he complained about harassment, no one in management took a negative

6    action against him.  24-1, at 85-86.

7    Plaintiff points to Defendant's failure to transfer him quickly as an adverse action. In his

8    declaration filed in opposition to Progress' motion for summary judgment, Plaintiff states that in

9    February of 2012 Donald Richardson and Trevor (no last name appears), neither of whom were

10    black, were transferred out of Plaintiff's unit.  Dkt. 29, at 7.  Plaintiff states that "other

11    employees" were transferred out of his unit before he was as well.  Dkt. 29, at 7.  Generally, a

12    failure to transfer is not an adverse employment action because it is a "continuation of the status

13    quo." *Del Castillo v. Washington, Dep't of Soc. & Health Servs*., No. C05-1122JLR, 2007 WL

14    2713035, at *8 (W.D. Wash. Sept. 14, 2007) *aff'd sub nom. Del Castillo v. Dep't of Health &*

15    *Human Servs*., 304 F. App'x 607 (9th Cir. 2008) (*citing generally Ray v. Henderson*, 217 F.3d

16    1234, 1240 (9th Cir.2000).  Plaintiff has not shown that in this case, it was an adverse action.

17                    3.  Causal Link

18    Plaintiff has also failed to show that there was a causal link between his December 2012

19    complaint and Defendant's delay in transferring him away from Mr. Liess' supervision, which

20    occurred almost a year later.  Plaintiff offers no evidence in support of causation.

21                    4.  Further Burden Shifting

22    Assuming, for the sake of argument, that Defendant's decision regarding transferring

23    Plaintiff a year later was an adverse employment action, and that there was a causal link with his

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 17

1  complaint, the burden shifts to Defendant to present evidence of a legitimate non-discriminatory

2  reason for the employment decision. *Estevez,* at 797-798.

3      Defendant points out that there were no positions available for which Plaintiff was

4  qualified during that time. Dkts. 25, 26 and 27.  Assuming again, that Defendant has carried its

5  burden, the burden then shifts back to the Plaintiff, "who can attempt to prove that the

6  employer's reason is pretextual." *Estevez,* at 798.

7      To show pretext, Plaintiff has to provide some evidence that the Defendant's reason for

8  failing to transfer him sooner than they did is "unworthy of belief." *Brown v. City of Tacoma*,

9  179 Wash. App. 1028 (2014).

10      Plaintiff fails to carry his burden.  He points to no evidence that there were positions in

11  the company for which he was qualified that he could have been transferred into earlier.  His

12  general assertion - that others were transferred while he was not transferred - is insufficient.

13      At the summary judgment stage, Plaintiff "needed to show only that a reasonable trier of

14  fact could, but not necessarily would, draw the inference that retaliation was a substantial factor

15  in the adverse employment decision." *Brown*, at 1028.  He has failed to meet this burden.  His

16  claim for retaliation should be dismissed.

17      **D.  MOTION TO DISMISS OTHER STATE TORTS**

18      Progress moves to dismiss Plaintiff's claims for assault, outrage, negligent infliction of

19  emotional distress and negligent supervision and/or hiring as duplicative of Plaintiff's

20  discrimination and retaliation claims, as barred by the worker's compensation statute, and

21  because it cannot be held liable for the torts of an employee. Dkt. 23.

22          1.  <u>Duplicative Claims?</u>

23

24

1    To the extent that Defendant moves to dismiss Plaintiff's remaining claims because they

2 are duplicative of his discrimination and retaliation claims, the motion should be denied.  The

3 discrimination and retaliation claims are dismissed by this order, and so the other claims should

4 not be dismissed on this basis.

5    2.   Barred by Workers' Compensation Statute?

6    Under Washington's worker's compensation statute, the Industrial Insurance Act (IIA),

7 RCW 51.24.010, *et. seq*., workers are generally barred from suing employers over work place

8 injuries because the IIA provides an exclusive remedy.  *See Vallandingham v. Clover Park Sch.*

9 *Dist.,* 154 Wn.2d 16, 26 (2005).  The Washington State Supreme Court recognizes exceptions to

10 this statute for claims for discrimination and physical or emotional injuries flowing from that

11 discrimination.  *Goodman v. Boeing Co*., 127 Wash.2d 401 (1995). Washington courts have also

12 held that, in some instances, the IIA does not bar a separate claim for emotional injuries as a

13 result of an employer's negligence or physical assault.  *Chea v. Men's Wearhouse, Inc.,* 85

14 Wash.App.405 (1997).  Progress has not shown that the IIA barred all Plaintiff's claims.

15    3.   Liability for Torts of Employee?

16    In arguing that it cannot be held liable for the torts of an employee, Defendant references

17 the claims for outrage and assault.  Dkt 23.

18    "Once an employee's underlying tort is established, the employer will be held vicariously

19 liable if the employee was acting within the scope of his employment."  *Robel v. Roundup Corp*.,

20 148 Wash.2d 35, 53-54 (2002)(*internal quotations and citations omitted*).  A claim of vicarious

21 liability can be defeated "by showing that the employee's conduct was (1) intentional or criminal

22 and (2) outside the scope of employment."  *Id.,* at 54.

23    *a.   Outrage*

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 19

1       A claim for outrage requires proof of the following elements: "(1) extreme and

2   outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual

3   result to plaintiff of severe emotional distress."  *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wash. 2d

4   820, 355 (2015)(*internal citations and quotations omitted*). While "a jury ultimately determines

5   if conduct is sufficiently outrageous, the court makes the initial determination of whether

6   reasonable minds could differ about whether the conduct was sufficiently extreme to result in

7   liability." *Id*.

8       As to the first element, to "establish extreme and outrageous conduct, a plaintiff must

9   show that the conduct was so outrageous in character, and so extreme in degree, as to go beyond

10  all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

11  civilized community." *Id*.

12      While Plaintiff argues in his response that he has described sufficiently outrageous

13  situations where another "man was mimicking sodomy towards [sic] him, pretending to mount

14  him from behind, and pretending to hum [sic] inanimate objects."  Dkt. 28.  He asserts that "the

15  conduct of Mr. Liess lead to others believing that the behavior was acceptable, and they joined in

16  their own form of disgusting behavior . . . Furthermore, [Plaintiff] was belittled by the term

17  'boy.'" *Id*.

18      Plaintiff has failed to show that in the circumstances here, the behavior engaged in was so

19  outrageous and extreme as to go beyond all bounds of decency.  While in retrospect Plaintiff

20  says he was disgusted by the "humping" etc. behavior (in his declaration in opposition to the

21  summary judgment motion), he testified that at the time he thought it was funny and was not

22  offended.  While in some situations this behavior and use of the term "boy" might be sufficiently

23  extreme to be considered outrageous, under the facts presented, and in accord with Plaintiff's

24

1    own testimony, it does reach that threshold.  Plaintiff's claim for outrage/intentional infliction of

2    emotional distress should be dismissed.  Accordingly, the Court need not reach whether Progress

3    should be held liable for outrage.

4                           *b.  Battery/Assault*

5            Neither Defendant in its opening brief nor Plaintiff in his response address the elements

6    of battery/assault or whether there is evidence to support such a claim.  Under Washington law,

7    "a 'battery' is an intentional and unpermitted contact with the plaintiff's person."  *Kumar v. Gate*

8    *Gourmet Inc*., 180 Wash. 2d 481, 504, 325 P.3d 193, 204 (2014). "An assault is any act of such a

9    nature that causes apprehension of a battery."  *McKinney v. City of Tukwila*, 103 Wash. App.

10    391, 408, 13 P.3d 631, 641 (2000).

11            In its reply, Defendant raises arguments on the merits of the claim. Assuming, without

12    finding, that Plaintiff has stated sufficient evidence for a claim for assault, the next issue is

13    whether Progress should be held vicariously liable.

14            In order for Progress to defeat a claim for vicarious liability, it has to show that Mr. Liess

15    was acting outside the scope of his employment when he committed the alleged assaults.  *Robel,*

16    at  53-54.  That is, Progress must show that the Mr. Liess' behavior was "(1) intentional or

17    criminal and (2) outside the scope of employment."  *Id.,* at 54.

18            Progress has shown, and Plaintiff does not dispute that Mr. Liess' behavior was

19    intentional.  Further, Progress points out that Mr. Liess' conduct, while it occurred on company

20    grounds, was not in furtherance of the Progress' business, but was "to 'effect a purpose all [his]

21    own."  Dkt. 23, at 30 (*citing Thompson v. Everett Clinic*, 71 Wn.App. 548 (1993)).  Plaintiff has

22    not pointed to sufficient issues of fact through which a fact finder could conclude that Mr. Liess'

23    humping Plaintiff, other people, a doorframe, a desk, and touching Plaintiff's leg and shoulder

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 21

1  were within Mr. Liess' scope of employment.  Plaintiff's claim for battery/assault, asserted

2  against Progress, should be dismissed.

3  *c.  Negligent Infliction of Emotional Distress*

4  "A plaintiff may recover for negligent infliction of emotional distress if she proves duty,

5  breach, proximate cause, damage, and objective symptomatology." *Kumar v. Gate Gourmet*

6  *Inc.*, 180 Wash. 2d 481, 505 (2014).

7  Plaintiff has failed to point to issues of fact as to any of the elements.  Plaintiff's claim

8  for negligent infliction of emotional distress should be dismissed.

9  *d.  Negligent Hiring/Supervision*

10  The theory of negligent hiring and or supervision "creates a limited duty to control an

11  employee for the protection of third parties, even where the employee is acting outside the scope

12  of employment." *Niece v. Elmview Grp. Home*, 131 Wash.2d 39, 51, 929 P.2d 420 (1997). To

13  establish a claim for negligent hiring/supervision, the Plaintiff must show: (1) Mr. Liess acted

14  outside the scope of his employment with Progress; (2) he presented a risk of harm; (3) Progress

15  knew, or should have known in the exercise of reasonable care, that Mr. Liess posed a risk to

16  others; and (4) Progress' failure to supervise was a proximate cause of the loss.  *Garrison v.*

17  *Sagepoint Fin., Inc.*, 185 Wash. App. 461, 484-85 (2015).  "Washington cases have generally

18  held that an employer is not liable for negligent supervision of an employee unless the employer

19  knew, or in the exercise of reasonable care should have known, that the employee presented a

20  risk of danger to others." *Niece v. Elmview Grp. Home*, 131 Wash. 2d 39, 48-49 (1997).

21  Plaintiff has failed to point to sufficient issues of fact as on any of the elements of either

22  his negligent hiring or negligent supervision claims.  These claims should be dismissed.

23

24

1

**E.  CONCLUSION**

2   Plaintiff's has failed to point to sufficient issues of fact as to each of his claims.  This case

3   should be dismissed.

4                                          **III.      ORDER**

5   It is **ORDERED** that:

6       • Defendants' Motion for Summary Judgment (Dkt. 23) **IS GRANTED;** and

7       • This case **IS DISMISSED**.

8   The Clerk is directed to send uncertified copies of this Order to all counsel of record and

9   to any party appearing *pro se* at said party's last known address.

10   Dated this 19th day of November, 2015.

11

12

13   ROBERT J. BRYAN
     United States District Judge

14

15

16

17

18

19

20

21

22

23

24